IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Liliana SOLIS, on behalf of herself, the general public and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act,<br><br>   Plaintiff,<br><br>   v.<br><br>The REGIS Corporation and SUPERCUTS Corporate Shops, Inc.,<br><br>   Defendants. | No. C 05-03039 CRB<br><br>**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION, AND DENYING MOTION TO STRIKE, MOTION FOR SANCTIONS, AND MOTION FOR A PROTECTIVE ORDER** |

   Plaintiff seeks to represent two classes, each to pursue recovery under a distinct theory. A putative "check-cashing" class would claim damages and civil penalties for the issuance of out-of-state payroll checks by The Regis Corporation ("Regis") and/or Supercuts Corporate Shops, Inc. ("Supercuts"), while a "Matrix-Overtime" class would seek to recover damages arising from allegedly unlawful aspects of Supercuts' incentive-pay system. Because Plaintiff's own compensation was never affected by Supercuts' incentive pay system, her motion to certify the "Matrix-Overtime" class is DENIED for lack of an adequate and typical class representative. A "check-cashing" class comprising all California Supercuts employees during the class period is CERTIFIED. Plaintiff cannot, however, adequately represent a broader class composed of all California workers who received paychecks from

Regis.

Plaintiff also moves to strike certain declarations submitted by Regis, and Regis moves for sanctions and a protective order relating. These motions are DENIED, although without prejudice to any future evidentiary motions to be brought at or before trial.

## THE PARTIES

As a preliminary matter, the identities of the defendants before the Court require some clarification. The original Summons issued by the Alameda County Superior Court was addressed to "The Regis Corporation and each of their subsidiaries doing business in California under such names as Supercuts." The caption of Plaintiff's Third Amended Complaint names "THE REGIS CORPORATION and each of their subsidiaries doing business in California under such names as Supercuts, MasterCuts, Regis Salons, Trade Secret, SmartStyle, Carlton Hair International, Mia & Maxx Hair Studio, Hair Crafters, Great Expectations, We Care Hair, HairMasters, Vidal Sassoon, and DOES 1-50." However, the Complaint's surviving causes of action seek recovery only against The Regis Corporation ("Regis") and Supercuts Corporate Shops, Inc. ("Supercuts").

Seyfarth Shaw LLP has consistently signed defense pleadings as "Counsel for Defendant Regis Corporation." Regis's original Answer filed in state court purported to make its denials "for itself alone and for no other defendant." The Answer filed in this Court to Plaintiff's Third Amended Complaint similarly makes representations on behalf of "defendant REGIS CORPORATION." Pleadings from the Seyfarth Shaw firm have been variously captioned and have referred to defendant(s) in both the singular and the plural, seemingly without discrimination.

The parties' initial Joint Case Management Conference Statement reflected that they were "unaware of any parties that [had] not been served" and were "unaware of any additional parties." In April 2006, Seyfarth Shaw moved for summary judgment on behalf of Regis Corporation "as to the claims brought against all defendants. . . with the exception of Supercuts, Inc." In its Order granting in part the Motion For Summary Judgment, this Court instructed that all non-Supercuts subsidiaries should henceforth be omitted from captions.

1  Regis has ignored this instruction, while Plaintiff's most recent pleadings refer in the caption
2  to "The Regis Corporation, et al., Defendants."

3  Notwithstanding the uncertainty outlined above, the parties' conduct, the Court's
4  previous orders, and the language of the Third Amended Complaint's First, Third, and
5  Fourth Causes of Action establish that exactly two defendants are presently before this Court:
6  Regis and Supercuts. Regis is the corporate parent of both Supercuts and a plethora of other
7  subsidiaries who have previously been dismissed from this action.[1] Plaintiff's First and
8  Fourth Causes of Action (and the putative Matrix-Overtime class) seek recovery against
9  Supercuts alone, while her Third Cause of Action (and the putative check-cashing class) seek
10 recovery against both Regis and Supercuts. Wherever possible, this Order will refer to these
11 two defendants by name.

## PROCEDURAL HISTORY

Plaintiff filed this putative class action asserting claims under the California Labor Code in Alameda County Superior Court in July 2005. Regis removed to federal court pursuant to the jurisdictional provisions of the Class Action Fairness Act of 2005 (Pub. L No. 109-2, 119 Stat. 4, codified in relevant part at 28 U.S.C. § 1332(d)). Plaintiff's Third Amended Complaint, as modified by this Court's order of July 17, 2006 (the "Complaint"), is the currently operative complaint. It contains three surviving Causes of Action.[2]

The First Cause of Action asserts that Supercuts failed to properly calculate and pay overtime wages. The Fourth Cause of Action seeks waiting-time penalties for those same wages.[3] The legal theory supporting these two Causes of Action is not clearly set forth in the Complaint, but appears to hinge on the calculation of incentive wage rates with reference to a

---

[1] To be precise, Supercuts Corporate Shops, Inc. is apparently held by Regis through another subsidiary named Supercuts Shops, Inc. It is, however, undisputed that Supercuts Corporate Shops, Inc. was Plaintiff's direct employer and was in effect a subsidiary of Regis.

[2] The Court granted Regis's Motion to Strike the Second and Fifth Causes of Action, because Plaintiff added them to her Complaint without first obtaining leave. The dismissal was without prejudice to a future Motion for Leave to Amend to add the new Causes of Action, but no such Motion has been noticed by Plaintiff for hearing.

[3] The Fourth Cause of Action does not actually state whom it seeks relief from, but since the waiting time penalties arise out of the overtime claim, it appears that relief is sought against Supercuts alone.

3

fifteen-day period under the so-called "Matrix System." Plaintiff asserts that the use of this fifteen-day period (rather than a seven- or one-day period) is forbidden under California law.

The Third Cause of Action seeks recovery against both Regis and Supercuts for issuance of payroll checks drawn on an out-of-state bank, which is unlawful under section 212 of the California Labor Code.

Now pending before this Court are Plaintiff's Motion to Certify "Matrix-Overtime" and "Check-Cashing" classes, Regis's nominally separate "Motion to Not Certify" the same classes, and procedural motions by both sides relating to contacts between the attorneys and putative class members. The Matrix-Overtime class would pursue the First and Fourth Causes of Action, while the Check-Cashing class would pursue the Third.

## STATEMENT OF FACTS

### A.   Out-Of-State Checks

Several subsidiaries of the Regis Corporation operate chains of hair-cutting establishments and beauty parlors in California. These subsidiaries are separate taxable entities. Supercuts is one such chain. Plaintiff worked for about one year at a Supercuts in Thousand Oaks, California. Payroll for all of the subsidiaries was processed by the parent corporation at a facility in Minneapolis. All paychecks for California employees of Regis subsidiaries were drawn on the same bank (LaSalle National Bank, in Chicago) until around the time this lawsuit was filed in 2005. Paychecks for Supercuts employees were printed on special Supercuts paper stock; paychecks for employees of all other Regis subsidiaries were printed on a second, common type of stock. At least for some part of the putative class period, specific individuals in the Regis facility were tasked with processing the Supercuts payroll.

Plaintiff experienced some difficulties cashing her paychecks during the approximately one-year period that she worked for Supercuts. Her own bank placed a "hold" on deposited funds until the checks cleared. Plaintiff reports that this period was as long as two weeks. On at least one occasion Plaintiff cashed her check at a non-bank check-cashing facility, where she was charged an extra fee because the check was drawn on an out-of-state bank.

4

### B. Incentive Pay Under the Matrix System

Plaintiff seeks certification of a class to challenge Supercuts' "Matrix" system of incentive pay.[4] Under this system, employees are guaranteed a base hourly rate which is set at the time of hiring or promotion. In the default case, an employee's compensation is based exclusively on this base rate. Straight time is compensated at the base rate; regular overtime is compensated at one and a half times the base rate; and double-time hours are compensated at twice the base rate, all in accordance with California law.

Supercuts maintains an incentive system, however, under which an employee's hourly pay for a given pay period can be increased in (non-linear) proportion to the revenue she generates. All transactions are recorded by the company's cash registers, and at the end of each fifteen-day pay period an employee's aggregate service-revenue is divided by his or her total number of hours worked during the pay period.[5] This fraction corresponds to the employee's service-revenue per hour.

Ranges of service-revenue per hour are correlated with specific hourly wages. These correlations apply to all employees, and are set forth on a table known as the "Matrix." For example, a service-revenue per hour figure of between $27.20 and $27.59 is correlated with an hourly wage of $8.16.[6] If the hourly wage associated with an employee's service-revenue per hour exceeds her guaranteed base wage, then the higher wage applies in the calculation of both straight-time and overtime compensation during that pay period. If the hourly wage associated with an employee's service-revenue per hour for a given pay period is less than that employee's guaranteed minimum hourly wage, then the higher base-wage controls and her compensation is not affected by the incentive system. As a natural consequence of this

---

[4] Plaintiff does not allege that the Matrix system applies to employees of any other Regis subsidiary.

[5] Supercuts also sells beauty products. Employees earn a percentage commission on beauty products they sell, but product-sales revenue is not factored into service-revenue per hour.

[6] The service-revenue per hour ranges on the Matrix are set forth in forty-cent increments. The corresponding wage increments vary from three to nine cents. Generally speaking, the wage increments are lower at the bottom end of the scale, higher towards the middle and upper-middle, and drop off again towards the top of the scale. At the very top of the scale, a service-revenue per hour figure of over $52.40 entitles the worker to an hourly wage of $12.15.

5

system, an employee with a higher guaranteed minimum hourly wage will be less likely (other things being equal) to receive increased incentive pay based on the Matrix.

Because an employee's service-revenue per hour is recalculated for each pay period, her hourly wage may fluctuate, but it will never descend below her guaranteed hourly rate. The named plaintiff's guaranteed base rate during her employment with Supercuts began at ten dollars per hour and was later increased to eleven dollars per hour. Plaintiff never generated enough revenue per hour to be compensated at an hourly rate above her guaranteed minimum.

Plaintiff alleges that in an effort to keep from "diluting" her revenue, she worked some overtime hours off the clock. However, she did not succeed in "concentrating" her revenue sufficiently to receive incentive pay under the Matrix system.

## ANALYSIS

In order to be certified, a putative class action must meet all four of the criteria set forth in Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the prongs found under Rule 23(b). Rule 23(a) requires (1) that the putative class be so <u>numerous</u> as to prevent practical non-class litigation, (2) that members of the class possess claims based on <u>common</u> questions of law or fact, (3) that the claims of the proposed class representative be <u>typical</u> of those of the class, and (4) that both the proposed plaintiff and her counsel be positioned so as to <u>adequately represent</u> the interests of the class as a whole. <u>Amchem v. Windsor</u>, 521 U.S. 591, 613 (1997); <u>Zinser v. Accufix Research Institute</u>, 253 F.3d 1180, 1186 (9th Cir. 2001); <u>Hanlon v. Chrysler</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

Several "flavors" of class actions are described under Rule 23(b), but actions for money damages like this one are normally brought under Rule 23(b)(3). In order to certify a class action under this heading, a court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

//

6

**A. The Check-Cashing Class**

Plaintiff seeks to represent a class of all California employees of all Regis subsidiaries. For the reasons that follow, the Court finds that she is a suitable representative for a narrower class consisting of California Supercuts employees only

**1. <u>Supercuts Employees Have Common Claims, and Plaintiff Can Adequately Represent Them</u>**

Supercuts alone employs approximately 2000 people in California, so the numerosity requirement of Rule 23(a) is satisfied. The lawfulness of paying employees with checks drawn on an out-of-state bank is a common question of law uniformly applicable to each putative class member, and in this case deposition testimony supports these common facts: all Supercuts employees received checks drawn on the same bank and processed at the same facility by the same Regis employees. Plaintiff received the same sort of paychecks as other Supercuts employees, and her efforts in retaining counsel and prosecuting this lawsuit thus far suggest that she will apply adequate effort in support of the putative class's interest. Thus, there is no serious challenge to numerosity, adequacy, or commonality under Rule 23(a).

Instead, Regis challenges certification of the Supercuts Check-Cashing class by suggesting that Plaintiff's claims are not sufficiently typical to support certification of the putative class (per Rule 23(a)), that common questions of law or fact do not predominate over issues requiring individualized proof (Fed. R. Civ. P. 23(b)), and therefore that a class action is not a superior mechanism for dealing with the claims raised in this action.

Regis's argument goes, essentially, to damages. Regis claims that Plaintiff is the only employee to assert that she was "damaged or even inconvenienced" by receipt of out-of-state checks, and that proof of the harm, if any, to other putative class members would require extensive individualized inquiries. This argument fails for three independent reasons.

First, regardless of whether actual damages can be shown, each Supercuts employee appears to possess at least some claim to recover statutory penalties. Regis contests this point, arguing that penalties under Labor Code section 225.5 are only available if an

7

individual plaintiff can show actual damages. Even if this is true, Labor Code section 2699, known as the "Labor Code Private Attorneys General Act of 2004," provides for "gap filling" penalties for any Labor Code violation to which no penalty would otherwise attach. Cal. Labor Code § 2699(f).[7] Thus, each Supercuts employee appears to have a claim which rises or falls on the proof of common facts and the disposition of common legal questions.

Second, Plaintiff has submitted an expert declaration supporting the inference that most or all class members would likely have had a "hold" placed on their newly deposited funds, or, if they didn't have a bank account, would have paid a premium to one of the check-cashing establishments that "serve" low-income workers. These employees thus each experienced at least a potential harm, the corresponding economic value of which redounded to Regis, because Regis had the use of the funds until the period of the hold had lapsed (the so-called "float").

Lastly, where liability is controlled by common questions of law or fact, the need for individualized proof of damages will usually not defeat class certification. Epstein v. MCA, Inc., 50 F.3d 644, 669 (9th Cir. 1995), rev'd on other grounds sub nom Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367 (1996) (holding that "the amount of damages is invariably an individual question and does not defeat class action treatment")(internal citation and quotation marks omitted). Other than its contention that damages will require individualized proof, Regis offers no serious argument that Rule 23's requirements are not met with respect to the class of Supercuts employees.

About 2000 Supercuts employees received out-of-state paychecks during the class period. Each of them is potentially entitled to statutory penalties, making the class-action an efficient mechanism to accommodate their claims. Individualized proof of damages may well be necessary, but that fact alone does not defeat what is otherwise a clearly superior vehicle for the litigation of these claims. See Epstein, 50 F.3d at 669.

//

---

[7] Special administrative exhaustion requirements apply to actions brought under this Act, and the Court makes no comment as to whether those requirements have been fufilled. See Cal. Labor Code § 2699.3.

8

## 2. Plaintiff Has Standing to Sue Both Regis and Supercuts, But She Is Not An Adequate Representative of Non-Supercuts Employees

Plaintiff herself was only employed by one Regis subsidiary: Supercuts. She asserts her section 212 claim against both Regis and Supercuts, purportedly on behalf of all California employees of all Regis subsidiaries. Regis contends, however, that Plaintiff lacks standing to sue on behalf of non-Supercuts employees. This Court must therefore decide whether Plaintiff can represent a class that includes employees of the other siblings in this corporate family.

### a. Plaintiff Asserts An Injury At Regis's Hands

This Court has already dismissed all claims against Regis's non-Supercuts subsidiaries. (See Order of June 2, 2006, Granting in Part and Denying In Part Defendant's Motion for Summary Judgment.) Regis's standing argument as it relates to claims against these parties is thus moot.

By that same Order, this Court also held that a triable issue of fact existed as to whether Regis was directly liable to Plaintiff, as a "person, agent, or officer [who] issue[d] payments of wages due" under section 212 of the California Labor Code. (Id. at 3.) Plaintiff seeks to certify a class of all California workers whose paychecks were issued by the Regis corporation. Her standing to represent this class depends on the commonality of asserted injury at Regis's hands. The factual record concerning pay practices at Regis's various California subsidiaries is not as extensive as might be desired, but such evidence as the Court has before it suggests that all Regis employees were in fact paid with checks drawn on the same out-of-state bank account during the relevant period. Plaintiff therefore has standing to sue Regis on behalf of all California employees to whom Regis issued out-of-state paychecks.

### b. Plaintiff's Claim Against Regis Is Identical To Those Of The Non-Supercut's Subsidiaries

Many courts have refused to certify classes where plaintiffs worked for distinct corporate subsidiaries or divisions. See, e.g., Brooks v. Bellsouth Telecommunications, 164

9

F.R.D. 561, 566-67 (N.D. Ala. 1995) (refusing to certify a class consisting of management employees in "any unit, division or subsidiary" of employer, where proffered evidence was insufficient to support allegation of an overarching discriminatory pattern); <u>Sheffield v. Orius Corp.</u>, 211 F.R.D. 411, 417 (D. Or. 2002) (denying certification of a class made up of employees of parent corporation and its subsidiaries and affiliates throughout the United States, where factual differences existed between overtime pay practices and job descriptions in different units and subsidiaries); <u>Harper v. Lovett's Buffet, Inc.</u>, 185 F.R.D. 358, 363-64 (M.D. Ala. 1999) (limiting class to workers at specific restaurant that employed plaintiff; refusing to include employees at other restaurants owned and operated by defendant). The common thread running through these and similar cases, however, is that the plaintiffs could not show their own claims were typical of those possessed by other employees in separate units, divisions, subsidiaries, or worksites.

    In this case, Plaintiff's claim <u>against Regis</u> is in all material respects identical to those of putative class members who were employed by other Regis subsidiaries. It is undisputed that Plaintiff received paychecks from Regis, and deposition testimony establishes that all California employees of Regis subsidiaries received paychecks drawn on the same bank and signed by the same executive. The challenged practice in this case is simple, broadly applicable, and all but conceded already, whereas the cases cited by Regis relate to complex discrimination claims and wage-and-hour lawsuits where wage structure and job descriptions were material and differed from worksite to worksite. Moreover, cases on this subject do not purport to set forth a rule of law that employees of one division or subsidiary can never represent those of another in a class action.

    Because Plaintiff's claim against the parent corporation here arises directly from that parent's allegedly unlawful activity in processing her payroll checks, it is precisely parallel to the claims of other subsidiaries' employees against the parent <u>in its capacity as agent for its various corporate children</u>. See <u>Brady v. Roosevelt Steamship Co.</u>, 317 U.S. 575, 580 (1943) ("The liability of an agent for his own negligence has long been embedded in the law."). Regis's argument against certification on grounds of typicality therefore fails.

10

### c. Plaintiff Is Not An Adequate Representative of Non-Supercuts Employees In The Present Litigation

As noted above, only Supercuts and Regis remain as defendants in this litigation. The other Regis subsidiaries have been dismissed because Plaintiff was not employed by them and has no standing to pursue claims against them. (Order Granting in Part Motion for Summary Judgment at 4.) The present issue is whether Plaintiff can adequately represent the interests of non-Supercuts employees on the section 212 claim given that she cannot pursue any claims against their employers. The Court concludes that she cannot.

Any settlement or judgment that Plaintiff obtains can release, at most, only Regis and Supercuts. As a result, the non-defendant subsidiaries will still be vulnerable to their employees for the same violation: issuing out-of-state checks. Any settlement may therefore treat the claims of the Supercuts' employees differently from the claims of non-defendant employees. For these employees' claims to be adequately represented, they need a representative that can sue both Regis and their direct employer since both are potentially liable for the out-of-state check violation.[8]

In sum, since both Regis and its subsidiaries are potentially liable for each section 212 violation, and since Plaintiff cannot bring claims against the subsidiaries other than her own employer, Supercuts, she is not an adequate representative of the non-Supercuts' employees. The Check-Cashing class is therefore CERTIFIED with the MODIFICATION that it comprise only current and former Supercuts employees.

### B. Matrix-Overtime Class

In order to satisfy Rule 23's adequacy requirement, a plaintiff must, at a minimum, belong to the class she purports to represent. Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S.

---

[8] Regis and its California subsidiaries constitute a single economic interest, since Regis owns 100 percent of each subsidiary. However, as Plaintiff noted at oral argument, the subsidiaries are distinct legal entities and thus are exposed to separate joint-and-several liability for the alleged section 212 violations. Regis will naturally wish to extinguish all of its potential liability in any settlement, but since Plaintiff has no standing to sue the non-Supercuts subsidiaries, she cannot release their liability, and any settlement of the present litigation will thus be of limited practical value to Regis as an economic whole. Thus, any settlement with the broad class Plaintiff seeks to represent would likely come at a discount compared to what would be available in exchange for a truly comprehensive release of all section 212 claims against Regis and all of its subsidiaries.

11

1  147, 156 (1982). E. Texas Motor Freight Sys., Inc. v. Rodriquez, 431 U.S. 395, 403-404
2  (1977). In Falcon, the Supreme Court reversed class certification of an "across the board"
3  challenge to all of an employer's allegedly discriminatory employment practices, because the
4  named plaintiff (an employee) could not adequately represent a class of non-employees who
5  would have been hired but-for the defendant's allegedly unlawful hiring practices. Falcon,
6  457 U.S. at 158-59 (holding that the employee's "complaint provided an insufficient basis for
7  concluding that the adjudication of his claim of discrimination in promotion would require
8  the decision of any common question concerning the failure of petitioner to hire more
9  Mexican-Americans") (emphasis supplied).

10  Similarly, in Rodriguez, the Supreme Court reversed class certification where the
11  named plaintiffs concededly lacked the qualifications for promotion and thus were not
12  properly considered a part of the applicant pool harmed by the employer's allegedly
13  discriminatory promotion policies. Rodriguez, 431 U.S. at 403-404 (explaining that because
14  plaintiffs had "suffered no injury as a result of the alleged discriminatory practices, [they]
15  were] simply not eligible to represent a class of persons who did allegedly suffer injury").

16  Here, Plaintiff was theoretically subject to Supercuts' incentive pay system, but she
17  admits that her service-revenue per hour never qualified her for incentive pay. She also
18  admitted in her deposition that she was told when she was hired that the incentive pay system
19  would not apply at her location, since it was a relatively low-traffic salon.

20  Plaintiff could not have been injured by the incentive pay structure, since she was
21  never affected by it, and was not even led to believe that it would apply to her. She is
22  therefore in no position to assert claims on behalf of a class allegedly injured by the
23  calculation of wages under the system. Because Plaintiff is not a member of the putative
24  "Matrix-Overtime" class, she is neither a typical nor an adequate representative of that class.
25  //
26  //
27  //
28  //

12

**CONCLUSION**

For the foregoing reasons and the reasons stated at oral argument, the Court rules as follows:

1. Plaintiff's Objection To and Motion To Strike Regis's Declarations is DENIED;
2. Regis's Motion for Sanctions And A Protective Order is DENIED;
3. As to the Matrix-Overtime Class, Plaintiff's Motion to Certify is DENIED and Regis's Motion to Not Certify is GRANTED; and
4. As to the Check-Cashing Class, Plaintiff's motion is GRANTED and Regis's is DENIED, but only former and current employees of SUPERCUTS are included in the class.

**IT IS SO ORDERED.**

Dated: October 12, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2005\3039\Class_Cert_Order.wpd         13